1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT
9                      EASTERN DISTRICT OF CALIFORNIA
10
11   MARQUISE DRUMWRIGHT,                    **Case No.: 1:20-cv-01055-JLT (PC)**
12              Plaintiff,                   **ORDER REQUIRING PLAINTIFF TO**
                                             **SUBMIT A RESPONSE**
13        v.
                                             **(Doc. 8)**
14   F. PASCUA, et al.,
                                             **THIRTY-DAY DEADLINE**
15              Defendants.
16

17        Previously, plaintiff filed a form complaint in which the section to list facts supporting his

18   claims was left blank but for the words "See Attached," apparently referencing a document that was

19   not in fact attached to the complaint. (Doc. 1.) Because the complaint itself contained no factual

20   allegations, the Court informed plaintiff that it was subject to dismissal. (Doc. 7.) Plaintiff has now

21   filed a pleading that he contends was supposed to be attached to his original complaint. (Doc. 8.)

22   The Court will construe this filing as a First Amended Complaint. (Doc. 8.)

23        Generally, the Court is required to screen complaints brought by inmates seeking relief

24   against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C.

25   § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims

26   that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted,

27   or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

28   § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid,

1

1   the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . .

2   fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

3   **I.       Pleading Standard**

4          A complaint must contain "a short and plain statement of the claim showing that the pleader

5   is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but

6   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

7   do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly,

8   550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I

9   v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation

10  omitted).  While factual allegations are accepted as true, legal conclusions are not.  Iqbal, 556 U.S.

11  at 678.

12         Prisoners may bring § 1983 claims against individuals acting "under color of state law."

13  See 42 U.S.C. § 1983, 28 U.S.C. § 1915(e) (2)(B)(ii). Under § 1983, Plaintiff must demonstrate that

14  each defendant personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d

15  930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a

16  plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969

17  (9th Cir. 2009).  Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

18  liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342

19  (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short

20  of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

21  **II.      Plaintiff's Allegations**

22         Plaintiff brings this action for alleged violations of his First, Eighth, and Fourteenth

23  Amendment rights against several officers employed at California State Prison in Corcoran,

24  California ("CSP-Cor"): Correctional Officer F. Pascua, CO A. Mendoza, Sergeant J. Cerda, CO

25  E. Garcia, CO J. Carranza, CO P. Vellido, CO M. Podsakoff, CO S. Reaves, Lt. A. Delos Santos,

26  and Psychiatric Social Worker ("PSW") M.E. Davison. Each defendant is sued in his or her

27  individual capacity for damages.

28         As best as the Court can determine, plaintiff alleges as follows:

**A. Transfer to CSP-Cor**

On October 24, 2018, plaintiff was transferred to CSP-Cor despite a "Staff Separation Alert" ("SSA") in his file due to an incident during his previous period of incarceration at the institution. Lt. Delos Santos, the "segregation authority," should have declined plaintiff's transfer to CSP-Cor because of the SSA. Though not entirely clear, the allegations can be construed to suggest that this defendant was involved in the event precipitating the SSA. (See First Am. Compl. ¶¶ 65, 76.)

**B. Assault by Inmate During Therapy Group**

Plaintiff is a participant in the Mental Health Delivery System where he receives treatment and medication for unspecified mental health conditions.

On November 7, 2018, plaintiff was escorted by CO Reaves and CO Pascua to the Administrative Segregation Unit ("ASU") Treatment Group Room. Inmates who are brought into this room are mechanically restrained and locked into the lower locking mechanism of their chairs. Apparently, CO Reaves and CO Pascua failed to properly restrain one of the other inmates in the room, resulting in this inmate stabbing plaintiff, who was restrained and thus unable to protect himself. Plaintiff claims these defendants "allowed" the other inmate to be improperly restrained. (First Am. Compl. ¶ 43.)

PSW Davison witnessed the attack for "several moments" before running out of the room. After "three to four minutes," other staff members arrived in the room to separate the inmates. CO Reaves and CO Garcia were seen reapplying the restraints on plaintiff's attacker, confirming that the restraints were not properly applied the first time.

**C. Placement in the Correctional Treatment Center**

CO Pascua and CO Mendoza escorted plaintiff to a holding cell where he was still bleeding out of his puncture wounds, and he was kept in waist chains and his legs were shackled. It is possible, though not entirely clear, that the holding cell was in the Correctional Treatment Center ("CTC") where plaintiff was then handcuffed to the bed.

Plaintiff accuses CO Mendoza and CO Pascua, along with other unidentified individuals, of punching him, physically forcing him out of the medical bed, and pushing him onto the ground

while he was still mechanically restrained. Plaintiff was then placed in a wheelchair where CO Mendoza and CO Pascua denied him medical care before he was escorted to ASU.

### D.   Escort to Housing Unit

Sgt. Cerda, CO Garcia, and CO Carranza escorted plaintiff to his cell in the ASU. Plaintiff at this point was still in waist restraints. When these officers reached plaintiff's cell door, CO Garcia abruptly lifted the handlebars of the wheelchair to push plaintiff to the ground. Plaintiff attempted to catch his fall, but he was grabbed by the waist chains by either CO Carranza or CO Garcia and swing against the wall. Plaintiff was then prone on the ground while CO Carranza used his body weight and knee on plaintiff's body, and Sgt. Cerda applied force to plaintiff's legs. Plaintiff claims these defendants placed him inside his cell still restrained at the waist.

### E.   Medical Evaluation

Approximately 15 to 20 minutes later, CO Vellido and CO Podsakoff arrived at plaintiff's cell and took him to the ASU rotunda for medical treatment. After hydrogen peroxide, cotton, and clear tape were applied to his wounds to prevent further bleeding, plaintiff was returned to his housing unit, still restrained at the waist.

## III.   Discussion

### A.   Eighth Amendment Excessive Force

When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). In order to establish a claim for the use of excessive force in violation of the Eighth Amendment, a plaintiff must establish that prison officials applied force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In making this determination, the court may evaluate (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. Id. at 7; see also id. at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de

minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and citations omitted)).

Plaintiff accuses the defendants of using excessive force against him on two occasions: first, when he taken to CTC by CO Mendoza and CO Pascua, who punched him, physically forced him out of the medical bed, and pushing him onto the ground while he was still mechanically restrained; and second, when Sgt. Cerda, CO Garcia, and CO Carranza escorted plaintiff to his housing unit and then assaulted him outside of it. These allegations are sufficient to proceed against each of these defendants on an Eighth Amendment excessive force claim.

Plaintiff also asserts an excessive force claim against CO Vellido and CO Podsakoff for returning plaintiff to his cell without taking the waist restraints off. This claim fails for lack of specificity since it is unclear how long plaintiff remained in his cell with the waist restraints after these defendants left, how it was that the restraints were eventually taken off, and who took them off. It is also unclear if the failure to remove the waist restraints was because of these defendants' negligence or deliberate indifference. Without sufficient factual details, this claim may not proceed.

### B. Eighth Amendment Failure to Protect

In a "failure-to-protect" Eighth Amendment violation claim, an inmate must show that a prison official's act or omission (1) was objectively, sufficiently serious, and (2) the official was deliberately indifferent to inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. See Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040. A prison official need not "believe to a moral certainty" that an inmate is at risk of harm "before [he] is obligated to take steps to prevent such an assault," but "he must have more than a mere suspicion that an attack will occur." Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted). "[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to [an inmate's] future health." Williams v. Wood, 223 F. App'x 670, 671 (9th Cir. 2007) (citation omitted). The obviousness of the risk may be sufficient to establish knowledge. See

1   Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). The prisoner may

2   demonstrate that the risk was obvious due to the prisoner's personal characteristics or conditions

3   within the prison. See Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1078 (9th Cir. 2013).

4          Plaintiff's failure to protect claim asserted against Lt. Delos Santos lacks necessary details.

5   This claim is purportedly based on the defendant's approval of plaintiff's transfer to CSP-Cor

6   despite the presence of the SSA in plaintiff's file. It is unclear, however, if plaintiff attributes the

7   November 7, 2018, inmate attack and/or the subsequent staff assaults to Lt. Delos Santos's decision.

8   Moreover, it remains unclear whether Lt. Delos Santos was involved in the incident underlying the

9   issuance of the SSA or whether any of the staff members who assaulted plaintiff were aware of the

10  SSA. Because the allegations asserted against Lt. Delos Santos lack clarity, this claim is subject to

11  dismissal.

12         Plaintiff next asserts a failure to protect claim against CO Reaves and CO Pascua for failing

13  to properly secure the inmate who attacked him before they left the treatment group. On the facts

14  alleged, this claim fails because there is nothing to suggest that these defendants' failure to properly

15  secure the inmate was deliberate.

16         Liberally construed, plaintiff also asserts a failure to protect claim against PSW Davison,

17  who witnessed the assault and then ran out of the room. But the facts alleged suggest that this

18  defendant left the room to call officers, which is evidenced by their return to the room "three to

19  four minutes" after PSW Davison left. There is therefore no constitutional violation on these facts.

20         **C.  Eighth Amendment Medical Indifference**

21         Where a prisoner's Eighth Amendment claims arise in the context of medical care, the

22  prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate

23  indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). An Eighth

24  Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and

25  the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059

26  (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th

27  Cir. 1997) (en banc).

28         A serious medical need exists if the failure to treat the condition could result in further

6

significant injury or the unnecessary and wanton infliction of pain. <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u> at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." <u>Id.</u> at 842.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing <u>Estelle</u>, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106; <u>see also</u> <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. <u>See</u> <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).

Delays in providing medical care may manifest deliberate indifference. <u>Estelle</u>, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay was harmful. <u>See</u> <u>Berry v. Bunnell</u>, 39 F.3d 1056, 1057 (9th Cir. 1994); <u>McGuckin</u>, 974 F.2d at 1059; <u>Wood v. Housewright</u>, 900 F.2d 1332, 1335 (9th Cir. 1990); <u>Shapley v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006); <u>see also</u> <u>McGuckin</u>, 974 F.2d at 1060. In addition, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth

1    Amendment rights. <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam). A

2    failure to competently treat a serious medical condition, even if some treatment is prescribed, may

3    constitute deliberate indifference in a particular case. <u>Id.</u>

4          Throughout the pleading plaintiff claims that he was denied a medical evaluation and

5    treatment following the inmate assault and/or the assaults by officers. He states, for example, that

6    CO Pascua "refused to facilitate plaintiff's victimization during the medication evaluation at

7    ("C.T.C.") an[d] or treatment." (First Am. Compl. ⁋ 6.) He also claims that CO Mendoza and CO

8    Pascua "did not let plaintiff receive additional medical care at the time of the incident from

9    ("C.T.C.") upon arrival to ("A.S.U.")." (<u>Id.</u> ⁋ 50.) The Court notes, initially, that this is not one of

10   plaintiff's enumerated claims. It is also too vague and conclusory to proceed. That is, while plaintiff

11   alleges that he was denied medical care by CO Mendoza and CO Pascua, he also alleges that he

12   received medical care shortly thereafter when he was escorted to the ASU. For these reasons, this

13   claim is also insufficient to proceed.

14         **D.  Fourteenth Amendment Due Process**

15         Plaintiff accuses several of the defendants for filing a false report after the inmate assault

16   and/or the officer assaults. Generally, the filing of a false report by a prison official against a

17   prisoner is not a per se violation of the prisoner's constitutional rights. <u>See</u> <u>Muhammad v. Rubia</u>,

18   2010 WL 1260425, at *3 (N.D. Cal., Mar. 29, 2010), aff'd, 453 Fed. App'x 751 (9th Cir. 2011)

19   ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused

20   of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner

21   is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail

22   to state a claim under § 1983.") (citations omitted); <u>Harper v. Costa</u>, 2009 WL 1684599, at *2-3

23   (E.D. Cal., June 16, 2009), aff'd, 393 Fed. Appx. 488 (9th Cir. 2010) ("Although the Ninth Circuit

24   has not directly addressed this issue in a published opinion, district courts throughout California ...

25   have determined that a prisoner's allegation that prison officials issued a false disciplinary charge

26   against him fails to state a cognizable claim for relief under § 1983.").

27         There are, however, two ways that allegations that an inmate has been subjected to a false

28   disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the

false disciplinary report was filed in retaliation for his exercise of a constitutional right and (2) when the prisoner alleges that he was not afforded procedural due process in a proceeding concerning the false report. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns."); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in Wolff v. McDonnell are provided.").

For the reasons set forth infra, plaintiff fails to state a retaliation claim. He also does not allege that he was denied due process in the context of a hearing on any false report. Accordingly, plaintiff's allegations stemming from the issuance of false report must be dismissed.

**E.  First Amendment Retaliation**

Multiple defendants are accused of retaliating against plaintiff for reasons not entirely clear. At one point, plaintiff claims he was retaliated against for "being a known victim of a provoked stabbing…," while at other times he claims he was "subject to guard retaliation [*sic*]" for reasons unknown. (First Am. Compl. ⁋⁋ 12, 47.)

The fundamentals of a retaliation claim are easily summarized: "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000)). It is the plaintiff's burden to prove each of these elements. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Because being the victim of a stabbing is not protected conduct and it is unclear what other protected conduct plaintiff engaged in, the retaliation claim fails.

///

9

### F.  Failure to Comply with Institutional Procedures

Finally, plaintiff suggests at several points in the pleading that the defendants' failure to comply with institutional regulations violated his constitutional rights. As a general rule, the violation of state regulations does not rise to the level of a constitutional violation. See Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989), overruled on other grounds, Nettles v. Grounds, 830 F.3d 922 (9th Cir. 2016); Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir. 1981). Therefore, in itself, a state employee's failure to follow state law does not state a claim under Section 1983.

### IV.    Conclusion

Plaintiff properly asserts an Eighth Amendment excessive force claim against CO Mendoza, CO Pascua, Sgt. Cerda, CO Garcia, and CO Carranza. No other claims are cognizable as pled.

The Court will grantpPlaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If the last option is chosen, the undersigned will issue findings and recommendations to dismiss the complaint without leave to amend, plaintiff will have an opportunity to object, and the matter will be decided by a District Judge.

If plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an

10

amended complaint is filed, the original complaint no longer serves a function in the case. Id. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in bold font, "First Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Accordingly, the Court **ORDERS** that:

1. Within thirty days from the date of service of this order, plaintiff must file either a first amended complaint curing the deficiencies identified by the Court in this order, a notice of voluntary dismissal, or a notice of election to stand on the complaint; and

2. If plaintiff fails to file a first amended complaint or notice of voluntary dismissal, the Court will recommend the action be dismissed, with prejudice, for failure to obey a court order and failure to state a claim.

IT IS SO ORDERED.

Dated:   **February 20, 2021**              **/s/ Jennifer L. Thurston**
                                            UNITED STATES MAGISTRATE JUDGE

11