1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUISE LOUIS DRUMWRIGHT,<br><br>Plaintiff,<br><br>v.<br><br>F. PASCUA, *et al.*,<br><br>Defendants. | Case No. 1:20-cv-01055-CDB (PC)<br><br>**FOURTH SCREENING ORDER FINDING COGNIZABLE CLAIMS**<br><br>(Doc. 21)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANT**<br><br>**14-DAY OBJECTION DEADLINE**<br><br>Clerk of Court to assign a District Judge |

Plaintiff Marquise Louis Drumwright is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. On June 14, 2023, Plaintiff filed a third amended complaint ("TAC"). (Doc. 21.) The Court finds Plaintiff has stated some cognizable claims and other claims should be dismissed.

## I.    BACKGROUND

Plaintiff filed his original complaint on July 30, 2020. (Doc. 1.) Following screening, in the Court's Order issued November 12, 2020, Plaintiff was directed to file either a first amended complaint, a notice of voluntary dismissal, or a notice of election to stand on his complaint. (Doc. 7.) On December 14, 2020, Plaintiff filed a document titled "Notice of Return for File in

1    Response Thereof." (Doc. 8.) The filing included a handwritten complaint. (*Id.* at 4-16.)

2    On February 22, 2021, the Court issued its Order Requiring Plaintiff to Submit a

3    Response, directing Plaintiff to file either a first amended complaint, a notice of voluntary

4    dismissal, or a notice of election to stand on his complaint within 30 days. (Doc. 10.) Plaintiff

5    filed a first amended complaint on April 30, 2021. (Doc. 13.)

6    On April 10, 2023, the Court issued its Third Screening Order, directing Plaintiff to file

7    either a third amended[1] complaint curing the deficiencies identified in the order, a notice

8    indicating he did not wish to file a third amended complaint and was willing to proceed only on

9    the claims found cognizable by the Court, or a notice of voluntary dismissal. (Doc. 18.)

10    Following an extension of time, Plaintiff filed a third amended complaint on June 14,

11    2023. (Doc. 21.)

12    **II.      SCREENING REQUIREMENT**

13    The Court is required to screen complaints brought by prisoners seeking relief against a

14    governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

15    The Court must dismiss a complaint or portion thereof if the prisoner raises claims that are

16    frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary

17    relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); 28

18    U.S.C. § 1915(b). These provisions authorize the court to dismiss a frivolous *in forma pauperis*

19    complaint *sua sponte*. *Neitzke v. Williams*, 490 U.S. 319, 322 (1989). Dismissal based on

20    frivolousness is appropriate where the claim is "based on an indisputably meritless legal theory"

21    or "whose factual contentions are clearly baseless." *Id.* at 327. The Court must dismiss a

22    complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a

23    cognizable legal theory. *O'Neal v. Price*, 531 F.3d 1146, 1151 (9th Cir. 2008) (citing *Vaden v.*

24    *Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006)).

25    //

26    //

27

28    ─────────────────
[1] The Court construed Plaintiff's complaint filed April 30, 2021, to be a second amended complaint. (*See* Doc. 18 at 1.)

1    **III.    PLEADING REQUIREMENTS**

2        **A.    Federal Rule of Civil Procedure 8(a)**

3        A complaint must contain "a short and plain statement of the claim showing that the

4    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)'s simplified pleading standard

5    applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

6    513 (2002). The statement must give the defendant fair notice of the plaintiff's claims and the

7    grounds supporting the claims. *Id.* at 512.

8        Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of

9    a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,

10   556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff

11   must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

12   face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Plausibility does not require probability, but it

13   requires more than the "sheer possibility" of a defendant's liability. *Id.* (quoting *Twombly*, 550

14   U.S. at 556). A claim is plausible when the facts pleaded allow the court to make reasonable

15   inferences that the defendant is liable for wrongful conduct. *Id.* (quoting *Twombly*, 550 U.S. at

16   556). However, courts "are not required to indulge unwarranted inferences." *Metzler Inv. GMBH*

17   *v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

18       The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit

19   of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). This liberal

20   pleading standard applies to a plaintiff's factual allegations but not to his legal theories. *Neitzke*

21   *v. Williams*, 490 U.S. 319, 330 n.9 (1989). Moreover, a liberal construction of the complaint may

22   not supply essential elements of a claim not pleaded by the plaintiff. *Bruns v. Nat'l Credit Union*

23   *Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997). The mere possibility of misconduct and facts

24   merely consistent with liability is insufficient to state a cognizable claim. *Iqbal*, 556 U.S. at 678;

25   *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Vague and conclusory allegations

26   of official misconduct are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of*

27   *Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

28       Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely

3

1  clear that no amendment can cure the defect." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir.

2  2015) (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212–13 (9th Cir. 2012)); *see Cervantes v.*

3  *Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend

4  should be given freely, a district court may dismiss without leave where a plaintiff's proposed

5  amendments would fail to cure the pleading deficiencies and amendment would be futile.").

6          **B.      Linkage and Causation**

7          Section 1983 provides a cause of action for the violation of constitutional or other federal

8  rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. Section 1983 "is not

9  itself a source of substantive rights, but a method for vindicating federal rights elsewhere

10  conferred." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (quoting *Baker v. McCollan*,

11  443 U.S. 137, 144 n.3 (1979)).

12          To state a claim under section 1983, a plaintiff must show a causal connection or link

13  between the actions of the defendants and the deprivation alleged to have been suffered by the

14  plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976). The Ninth Circuit has held that a

15  government actor may be liable under section 1983, if he performs an affirmative act, participates

16  in another's affirmative acts, or fails to perform an act which he is legally required to do that

17  causes the prisoner to suffer a deprivation of rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.

18  1978) (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)). In addition to direct participation, a

19  government actor may be liable for "setting in motion a series of acts by others which the actor

20  knows or reasonably should know would cause others to inflict the constitutional injury."

21  *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting

22  *Johnson*, 588 F.2d at 743).

23          **IV.     PLAINTIFF'S ALLEGATIONS**[2]

24          Plaintiff names the following individuals employed at California State Prison-Corcoran:

25  F. Pascua, A. Mendoza, E. Garcia, J. Cerda, J. Carranza, P. Vellido, M. Podsakoff, S. Reaves, A.

26  Delos Santos, and M. E. Davison. (Doc. 21 at 1.) He seeks $1,600,000 in compensatory damages

27  _____

28  [2] The Court accepts Plaintiff's allegations as true only for the purpose of the screening requirement under 28 U.S.C. § 1915.

4

from each defendant, $322,000 in punitive damages, $666,666 "in nominal damages,"[3] costs of suit and reasonable attorney fees,[4] and any other relief the Court deems proper. (*Id.* at 17.)

### Transfer to Corcoran

On February 13, 2018, Plaintiff was transferred from CCI-Tehachapi to Corcoran B-yard despite a Staff Separation Alert ("SSA") arising from a battery against Lieutenant Delos Santos during Plaintiff's previous period of incarceration at Corcoran. (Doc. 21 at 2.) The California Department of Corrections and Rehabilitation ("CDCR") and superiors, including Warden M. Biter and Delos Santos, knew that Plaintiff was not to be returned Corcoran. (*Id.*) The transfer led to Plaintiff being subjected to "violations of Personal Safety (14th & 8th Amendment), Excessive Force (8th Amendment) & Retaliation (1st Amendment) of his Amended Rights." (*Id.*)

### October 24, 2018, Inmate Attack or Altercation

On October 24, 2018, Delos Santos, the "segregation authority," served Plaintiff with an Administrative Segregation Unit ("ad-seg") notice. (Doc. 21 at 2.)

On that date, Plaintiff was attacked by another inmate on Facility 4B-Yard. (Doc. 21 at 6.) Plaintiff did not have prior communication with this inmate and did not know why he was attacked by the inmate. (*Id.*) After the attack, Plaintiff told "the proceeding sergeant"[5] he felt unsafe at Corcoran and would be unable to program or stay at the facility because he had an SSA against prison officials there, including Delos Santos. (*Id.*) Plaintiff asked for an emergency transfer out of Corcoran because the SSA made him susceptible to abuse and risk of harm, such as that he faced on October 24, 2018. (*Id.*)

After the incident, Plaintiff asked the other inmate why he attacked Plaintiff. (Doc. 21 at 6.) "[T]he inmate said some 'higher-ups' told him Plaintiff was 'no-good' and was a 'SNY' inmate."[6] (*Id.*) Plaintiff alleges this intimidated him "because he knew now certain prison

---

[3] "Nominal damages, as the term implies, are in name only and customarily are defined as a mere token or 'trifling.'" *Cummings v. Connell*, 402 F.3d 936, 943 (9th Cir. 2005).

[4] Plaintiff, who is proceeding pro se, is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

[5] Plaintiff does not identify this individual. However, the Court infers Plaintiff is referring to Sgt. Cerda.

[6] The Court understands "SNY" to be an abbreviation for "Sensitive Needs Yard."

1  officials participated in or directed the violations and was the moving force of Plaintiff being

2  attacked and sus[cept]ible to harm." (*Id.*) Plaintiff asserts the attack "violated Plaintiff's right of

3  safety." (*Id.*)

4          **Assault by Inmate During Therapy Group**

5          On November 7, 2018, Plaintiff was escorted by correctional officers Reaves and Pascua

6  to the ad-seg treatment group room. (Doc. 21 at 2.) Prison officials are required to follow a state-

7  mandated procedure to check each inmate's handcuffs and shackles before leaving the treatment

8  group room. (*Id.*) During group session, Pascua failed to follow this procedure, and one of the

9  other inmates was not restrained to his chair. (*Id.* at 2-3.) The inmate attacked Plaintiff, who was

10 restrained and unable to protect himself. (*Id.* at 3.) "PSW" Davison sat and witnessed the attack

11 for "several moments" before running out of the room. (*Id.*) After three to four minutes, staff

12 members and responders arrived at the group room "to separate the inmates from where Plaintiff

13 was on the floor in a pool of blood." (*Id.*) Reaves and Garcia were then seen reapplying the

14 restraints on Plaintiff's attacker. (*Id.*) Plaintiff, still in chains and leg shackles, was placed in a

15 holding cell outside of the group room. Several minutes after being placed in the holding cell,

16 Plaintiff was still actively bleeding from his puncture wounds. (*Id.*)

17         **Placement in the Correctional Treatment Center**

18         After a delayed emergency response, Pascua and Mendoza escorted Plaintiff to the

19 Correctional Treatment Center ("CTC"). (Doc. 21 at 3.) Plaintiff was placed on a stretcher and

20 put into a van. (*Id.*) After arriving to CTC, Plaintiff was kept in waist chains, his legs were

21 shackled, and he was handcuffed to the bed. (*Id.*) He wanted to speak to medical personnel

22 regarding his stab wounds, when an unidentified "Doe" became aggressive and ordered Plaintiff

23 out of the bed. (*Id.*) Multiple prison officials threatened and intimidated Plaintiff to stop him

24 from speaking with medical staff about receiving proper medical care and information about his

25 puncture wounds. (*Id.*) Plaintiff states he "was denied this request" and mentioned he "would be

26 following up with an appeal." (*Id.*)

27         Plaintiff asserts the unidentified Doe stated, "You want to play that game? You think of

28 writing me up while I drag your ass out this bed." (Doc. 21 at 3.) Doe uncuffed Plaintiff from the

1    bed, grabbed him by his injured arm, began punching Plaintiff with closed fists, and physically

2    forced him out of the bed and onto the floor. (*Id.* at 3-4.) As Plaintiff was being pushed down to

3    the floor, Pascua stated, "If you write this shit up it will only get worse for you in the hole." (*Id.*

4    at 4.) Mendoza was on Plaintiff's back applying pressure. (*Id.*) Pascua grabbed at Plaintiff's

5    ankle restraints, causing pain, chafing, and scraping. (*Id.*) Other responders reported to the area,

6    and Plaintiff was placed into a wheelchair. (*Id.*) Plaintiff contends he needed additional medical

7    attention, but he did not report the use of force because he feared hostility from Mendoza,

8    Pascua, and Doe. (*Id.*)

9              **Escort to Housing Unit**

10           Defendants Cerda, Garcia, and Carranza escorted Plaintiff back to his cell at ad-seg.

11   (Doc. 21 at 4.) Plaintiff was still in waist restraints and handcuffs. (*Id.*) When they reached

12   Plaintiff's cell door, Garcia abruptly lifted the handlebars of the wheelchair to force Plaintiff out

13   of the chair. (*Id.*) Plaintiff attempted to catch his fall, but he was grabbed by the waist chains by

14   Carranza and swung against the wall. (*Id.*) The three officers lifted Plaintiff off his feet and

15   placed him in a prone position on the ground. (*Id.*) Carranza used his body weight and knee on

16   Plaintiff's body, and Cerda applied force to Plaintiff's legs, causing more pain from his stabbing

17   and shortness of breath. (*Id.*) While Plaintiff was still on the ground in waist restraints and leg

18   shackles, Cerda "placed a triangular shaped bar to Plaintiff's handcuffs … used so inmates don't

19   keep the handcuffs while being placed in the cell. (*Id.* at 4-5.)

20           Plaintiff's hands were still behind his back and the waist restraints still on when Vellido

21   and Podsakoff arrived at the cell. (Doc. 21 at 5.) Vellido yanked at the restraint bar causing

22   Plaintiff's arms to stretch beyond his back and causing him to strain. (*Id.*) Defendants pushed the

23   bar down, forcing Plaintiff's back shoulders to hit the open food tray slot and door. (*Id.*) With

24   Plaintiff's arms sticking out of the tray slot, Plaintiff dropped to his knees to alleviate the pain in

25   his shoulders. (*Id.*) Podsakoff unlocked the chain connected to Plaintiff's handcuffs, the tray slot

26   was locked, and the Defendants and responding staff left, with Plaintiff still chained around the

27   waist, cuffed behind his back, and in leg retrains. (*Id.*)

28

1    **Medical Evaluation**

2          After 20 minutes or more, Vellido and Podsakoff returned to remove Plaintiff for a cell-

3    front examination by Psychiatric Technician R. Covarrubias. (Doc. 21 at 5.) Plaintiff was taken

4    to the ad-seg rotunda for medical treatment. (*Id*.) His puncture wounds were treated with

5    hydrogen peroxide, cotton, and clear tape to prevent further bleeding. (*Id*.) Plaintiff's lips and

6    other markings were noted. (*Id*.) Plaintiff was escorted back to his cell front, where the waist

7    restraints and leg shackles were finally removed by Podsakoff. (*Id*.) When Plaintiff entered the

8    cell, the handcuffs were removed from his wrists by Vellido. (*Id*.)

9    **V.      DISCUSSION**

10   **A.      Defendant Delos Santos**

11   **1.      Supervisory Liability**

12         Plaintiff alleges generally that "Defendant Delos Santos is liable for the constitutional

13   violation[s] under supervisory liability." (Doc. 21 at 6.) Delos Santos knew Plaintiff was not to

14   be placed at Corcoran but "implemented the policy to place Plaintiff in [ad-seg]" because of the

15   SSA. (*Id.* at 6-7.) As the segregation authority, Delos Santos acted or failed to act despite the

16   substantial risk of harm to Plaintiff. (*Id.* at 7.) Delos Santos had a "duty to make aware to his

17   preceding officials that Plaintiff was being placed inside the prison, so they could secure

18   Plaintiff's protection." (*Id.*) By "using the SSA" to implement "an official policy" to place

19   Plaintiff in ad-seg without securing his protection, "Defendant Delos Santos led to Plaintiff being

20   subjected to violations of personal Safety & Excessive Force." (*Id.*)

21         Liability may not be imposed on supervisory personnel for the actions or omissions of

22   their subordinates under the theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676-77; *see Lemire*

23   *v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013) ("Vicarious liability

24   may not be imposed on a supervisor for the acts of lower officials in a § 1983 action."). "A

25   supervisor is only liable for constitutional violations of his subordinates if the supervisor

26   participated in or directed the violations, or knew of the violations and failed to act to prevent

27   them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

28         Supervisory liability may also exist without any personal participation if the official

1  implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

2  rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*,

3  942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

4  *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970). "The requisite causal connection may be

5  established when an official sets in motion a 'series of acts by others which the actor knows or

6  reasonably should know would cause others to inflict' constitutional harms." *Preschooler II v.*

7  *Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson*, 588

8  F.2d at 743); *cf. Lemire*, 726 F.3d at 1074-75 (prison supervisory official may be liable if

9  "personally involved in the constitutional deprivation or a sufficient causal connection exists

10  between the supervisor's unlawful conduct and the constitutional violation") (quoting *Lolli v.*

11  *Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)).

12      To prove liability for an action or policy, the plaintiff "must . . . demonstrate that his

13  deprivation resulted from an official policy or custom established by a . . . policymaker

14  possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Wash.*, 594 F.3d

15  707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between

16  such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*

17  *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

18  involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey*, 673

19  F.2d at 268.

20      The Court must determine whether the TAC contains sufficient factual allegations to state

21  a claim that is plausible on its face. *Iqbal*, 556 U.S. at 679. This is "a context-specific task that

22  requires the reviewing court to draw on its judicial experience and common sense." *Id.* The

23  word, "policy," must also "be consistent with the word's ordinary definition." *Pembaur v. City of*

24  *Cincinnati*, 475 U.S. 469, 481 (1986).

25      Plaintiff attempts to impose supervisory liability by characterizing Delos Santos's

26  placement of Plaintiff in ad-seg as an official policy. According to Plaintiff, Delos Santos

27  implemented a policy to place Plaintiff in ad-seg despite knowledge of substantial risk of harm to

28  Plaintiff, and this policy resulted in the use of excessive force against him.

1    This argument defies common sense and ordinary usage of the term "policy" in the

2    context of Plaintiff's assignment to ad-seg. Plaintiff does not specify what, exactly, the alleged

3    policy mandates or that Delos Santos had policy-making authority for Corcoran or CDCR.

4    Instead, the allegations indicate Plaintiff's placement in ad-seg despite the SSA was an isolated

5    decision by Delos Santos affecting only Plaintiff, rather than an institutional course of action.

6    Moreover, the facts do not support the conclusory allegations that Delos Santos participated in or

7    directed the violations, knew of, and failed to prevent the attacks on Plaintiff, or implemented a

8    policy that is constitutionally deficient and the moving force of the alleged constitutional

9    violations.

10   Plaintiff's allegation that "higher-ups" told the first attacking inmate Plaintiff was "no-

11   good" and was an "SNY" is too vague to attribute causation of the October 2018 attack to Delos

12   Santos. Under the circumstances of this case, Plaintiff is unable to hold Delos Santos liable for

13   the unconstitutional actions of his subordinates.

14                   **2.      Eighth Amendment Threat to Safety**

15   Plaintiff sues Delos Santos for deprivation of personal safety for transferring Plaintiff

16   back to Corcoran and placing him in ad-seg despite the SSA. (Doc. 21 at 7.) According to

17   Plaintiff, this act

18   [s]hows a deliberate indifference that Plaintiff was incarcerated
     under conditions posing a substantial risk of harm. This includes the
19   altercation involving Plaintiff on Oct 24th, 2018 . . . . at Corcoran.
     Given Plaintiff should not have been transferred or in the prison
20   itself. This altercation violated Plaintiff's right to protection against
     these risk[s] of harm, health, & safety.
21

22   (*Id.*) Plaintiff further alleges he was subjected to constitutional violations because he was in ad-

23   seg under Delos Santos's authority.

24   To state a claim for threat to safety, an inmate must allege facts to support that he was

25   incarcerated under conditions posing a substantial risk of harm and that prison officials were

26   "deliberately indifferent" to those risks. *Farmer*, 511 U.S. at 834; *Frost v. Agnos*, 152 F.3d 1124,

27   1128 (9th Cir. 1998). Deliberate indifference is one form of the "unnecessary and wanton

28   infliction of pain," that is central to an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S.

1   97, 104 (1976).

2        "Deliberate indifference is a high legal standard." *Edmo v. Corizon, Inc.*, 949 F.3d 489,

3   494 (9th Cir. 2020) (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)). To

4   adequately allege deliberate indifference, a plaintiff must set forth facts to support that a

5   defendant knew of, but disregarded, an excessive risk to inmate health and safety. *Farmer*, 511

6   U.S. at 837; *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004).

7        Essentially, Plaintiff's deliberate indifference claim is an alternative effort to hold Delos

8   Santos vicariously liable for the Eighth Amendment violations of his subordinates on October

9   24, 2018. Again, the allegations fail to establish Delos Santos participated in or directed the

10  violations, knew of, and failed to prevent the attacks on Plaintiff, or implemented a policy that is

11  constitutionally deficient and the moving force of the alleged constitutional violations. Thus, the

12  TAC fails to state a cognizable Eighth Amendment claim against Delos Santos for the threat to

13  Plaintiff's safety by placement in ad-seg.

14                      **3.      Eighth Amendment Failure to Protect**

15       Plaintiff similarly alleges Delos Santo failed to protect Plaintiff from the stabbing by a

16  fellow inmate and the force used by correctional officers on November 7, 2018.

17       The Eighth Amendment requires prison officials to protect prisoners from violence at the

18  hands of other prisoners because "being violently assaulted in prison is simply not part of the

19  penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 833-

20  34; *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009). In a "failure-to-protect" claim, a

21  prisoner must show that a prison official's act or omission (1) was objectively, sufficiently

22  serious, and (2) the official was subjectively, deliberately indifferent to inmate's health or safety.

23  *Farmer*, 511 U.S. at 834; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

24       Under the objective prong, "[w]hat is necessary to show sufficient harm for the purposes

25  of the Cruel and Unusual Punishment Clause depends on the claim at issue." *Hudson v.*

26  *McMillian*, 503 U.S. 1, 8 (1992). For a failure-to-protect claim, the prisoner must show that he

27  was placed in conditions that posed a substantial risk of serious harm. *Farmer*, 511 U.S. at 834

28  (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

The subjective prong requires "more than ordinary lack of due care for the prisoner's interest or safety." *Farmer*, 511 U.S. at 835 (quotation omitted). To prove deliberate indifference, a plaintiff must show that the official knew of and disregarded an excessive risk to inmate safety. *Id.* at 837. The obviousness of the risk may be sufficient to establish knowledge. *See id.* at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). The prisoner may demonstrate that the risk was obvious due to the prisoner's personal characteristics or conditions within the prison. *See Lemire*, 726 F.3d at 1078.

A plaintiff alleging an Eighth Amendment violation must "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire*, 726 F.3d at 1074. "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson*, 588 F.2d at 743-44.

Although Defendant Delos Santos used his authority to house Plaintiff in Corcoran in contravention of the SSA, the allegations do not establish that Delos Santos set in motion the attacks by other inmates and the use of force by correctional officers during the two incidents. Any connection between Delos Santos's placement of Plaintiff in ad-seg and the harms Plaintiff suffered there are too attenuated to hold Defendant Delos Santos personally liable. Thus, Plaintiff does not state a plausible failure to protect claims against Delos Santos.

### 4.    First Amendment Retaliation

Plaintiff alleges Delos Santos used his position of authority and power to retaliate against Plaintiff by keeping him at Corcoran and placing him in "ASU" (ad-seg). (Doc. 21 at 8.) Delos Santos knew Plaintiff was subjected to harms, including the October 24, 2018, altercation and should have transferred him out of Corcoran.

To state a claim for First Amendment retaliation, a plaintiff must allege five elements: (1) he engaged in protected activity; (2) the state actor took an adverse action against the plaintiff; (3) there is a causal connection between the adverse action and the protected conduct; (4) the defendant's actions would chill or silence a person of ordinary fitness from protected activities;

1    and (5) the retaliatory action did not advance a legitimate correctional goal. *Watison v. Carter*,

2    668 F.3d 1108, 1114 (9th Cir. 2012).

3           Although Plaintiff alleges Delos Santos "retaliate[d] against Plaintiff because of a prior

4    altercation that dealt with Delos Santos at Corcoran State Prison," Plaintiff again provides no

5    other details of the altercation. (Doc. 21 at 8.) An altercation is not protected conduct under the

6    First Amendment. Without more details, the prior altercation is not a basis for a retaliation claim.

7           Plaintiff further alleges:

8               Given Plaintiff was asking to engage in protected activity for the
                safety of his well being the assigned state actor, being Defendant.
9               Delos Santos should have used his position of authority to make
                aware to his preceding officials that Plaintiff was being placed inside
10              the prison, so they could serve Plaintiff's safety and protection.

11   (*Id.* at 9.) Even under a liberal construction, Plaintiff's argument defies common sense, given the

12   SSA was directed at Delos Santos because of this prior altercation. Thus, Delos Santos had no

13   need to order his subordinate correctional officers to give Plaintiff particularized attention and

14   protection (from Delos Santos).

15          Plaintiff's assertion that he engaged in protected activity is not supported by the factual

16   allegations. Even if he did, Plaintiff has failed to allege the fourth element – that Delos Santos's

17   actions would chill or silence a person of ordinary fitness from protected activities. Because

18   Plaintiff cannot establish that he engaged in protected activity, the TAC does not state a

19   cognizable First Amendment retaliation claim against Defendant Delos Santos.

20              **5.     Fourteenth Amendment Equal Protection**

21          Plaintiff alleges Delos Santos violated his Fourteenth Amendment right to equal

22   protection. (Doc. 21 at 10.) The Fourteenth Amendment provides: "No State shall . . . deny to

23   any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

24   "The Equal Protection Clause requires the State to treat all similarly situated people equally."

25   *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). There are two

26   different ways in which a plaintiff may state an equal protection claim. A plaintiff's first option is

27   to allege "facts plausibly showing that the defendants acted with an intent or purpose to

28   discriminate against [him] based upon membership in a protected class." *Id*. (quoting *Thornton v.*

1    *City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)). The second way a plaintiff may state a

2    claim is "as a 'class of one' by alleging that [the] plaintiff has 'been intentionally treated

3    differently from others similarly situated and that there is no rational basis for the treatment."

4    *Koboyashi v. McMulling*, 2022 WL 3137958, at *23 (C.D. Cal. May 31, 2022) (quoting *Village*

5    *of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). However, the Constitution does not require

6    individuals who are, in fact, differently situated, to be treated equally under the law. *Michael M.*

7    *v. Super. Ct. of Sonoma Cnty.*, 450 U.S. 464, 469 (1981).

8           Plaintiff makes no allegations concerning discrimination against him as a member of a

9    protected class or as a class of one. Therefore, he has failed to state a cognizable equal protection

10   claim. Plaintiff's allegations suggest he intended to assert a due process claim.

11                        **6.      Fourteenth Amendment Due Process**

12          Plaintiff asserts he has a protected liberty interest in not being held inside Corcoran and

13   avoiding ad-seg. (Doc. 21 at 10.) The Fourteenth Amendment protects persons from deprivations

14   of life, liberty, or property without due process of law. U.S. Const. amend. XIV. To state a due

15   process claim, the plaintiff must first "establish that one of these interests is at stake." *Wilkinson*

16   *v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). "The Due Process Clause standing alone

17   confers no liberty interest in freedom from state action taken 'within the sentence imposed.'"

18   *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 480 (1983)).

19          Protected liberty interests may arise from the Constitution or from state law. *Wilkinson*,

20   545 U.S. at 221. "A state may create a liberty interest through statutes, prison regulations, and

21   policies." *Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013) (citation omitted). When

22   a protected liberty interest is implicated, the Due Process Clause provides certain procedural

23   guarantees. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). The amount of

24   process or specific procedures required vary by context and the particular interest at stake. *See*

25   *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

26          "The Due Process Clause standing alone confers no liberty interest in freedom from state

27   action taken 'within the sentence imposed,'" including housing or classification decisions.

28   *Sandin*, 515 U.S. at 480. [T]he Due Process Clause [does not] . . . protect a duly convicted

                                                   14

prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Thus, prisoners lack a liberty interest in being housed in a particular facility or unit, unless the state created a protected right "by placing substantive limitations on official discretion." *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983). "In California, there are no substantive limitations on prison officials' discretion to refuse to transfer a prisoner . . . thus California has not created a protected liberty interest in prison transfers." *Hernandez v. Gomez*, 163 F.3d 606 (9th Cir. 1998) (unpublished) (citing Cal. Penal Code § 5080; Cal. Code Regs. tit. 15, § 3379). Transfer to a different prison does not require due process solely because "life in one prison is much more disagreeable than in another." *Ward v. Carr*, 467 F. App'x 721, 723 (9th Cir. 2012) (quoting *Meachum*, 427 U.S. at 225). Moreover, the Due Process Clause does not give prison inmates a liberty interest to remain within the general prison population. *McFarland v. Cassady*, 779 F.2d 1426, 1427-28 (9th Cir.1986).

To establish a liberty interest in remaining free from administrative segregation, a prisoner must show that his placement in segregation resulted in an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010) (applying the "atypical and significant hardship" test contemplated in *Sandin*). Placement in segregation for administrative purposes "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," and thus, generally does not violate a liberty interest protected by the Due Process Clause. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), abrogated in part on other grounds by *Sandin*, 515 U.S. 472.

Where a substantive due process right is triggered by placement in administrative segregation, certain procedural safeguards must be met. Prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversarial review of the evidence justifying the placement. *See Hewitt*, 459 U.S. at 476, abrogated in part on other grounds by *Sandin*, 515 U.S. 472. The prisoner must be provided notice of any charges against

1  him and an opportunity to respond. *See id*. at 477.

2  Here, Plaintiff has not alleged sufficient facts to indicate his ad-seg confinement was an

3  atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515

4  U.S. at 484; *Richardson*, 594 F.3d at 672; *see Medina v. Morris*, 676 Fed. App'x 702, 703 (9th

5  Cir. 2017) (dismissal of due process claim based on administrative segregation placement was

6  proper where plaintiff failed to allege facts sufficient to show a due process violation); *Everett v.*

7  *Black*, 738 Fed. App'x 537, 538 (9th Cir. 2018) (same). And "[t]ypically, administrative

8  segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*,

9  345 F.3d 1071, 1078 (9th Cir. 2003). Unlike the plaintiff in *Serrano*, Plaintiff has not alleged

10  facts asserting that, due to "a novel situation" or unusual personal characteristics, his placement

11  in administrative segregation presented an atypical and significant hardship compared to the

12  level of hardship routinely faced by other inmates in the same setting. Rather, he simply states a

13  legal conclusion that because there existed an SSA involving Delos Santos following a prior

14  incident between them, his ad-seg placement was improper. *Iqbal*, 556 U.S. at 678 (factual

15  allegations are accepted as true, but legal conclusions are not).

16  Further, even assuming Plaintiff's placement in ad-seg was an atypical and significant

17  hardship considering the staff separation alert or SSA involving Delos Santos, Plaintiff fails to

18  state a claim upon which relief can be granted. First, Plaintiff's third amended complaint

19  indicates he received notice of the October 24, 2018, ad-seg placement on that same date. (*See*

20  Doc. 21 at 2.) Further, although Plaintiff asserts "[n]o sufficient procedural protections were

21  provided" (*id*. at 10), there are no facts asserted to indicate Plaintiff was not provided an

22  opportunity to respond. Rather, it would appear Plaintiff had such an opportunity because the

23  third amended complaint alleges that he "asked for a forthwith transfer/emergency transfer out of

24  'Cor-CSP' because of the 'SSA' & because he was now susceptible to abuse an[d] risk of harm

25  done to him [which] he faced on that day of October 24th, 2018" (*id*. at 6) and "he told the prison

26  officials he felt unsafe at the facility" (*id*. at 10). *Hewitt*, 459 U.S. at 477. There are simply no

27  facts alleging prison officials failed to conduct an informal, non-adversarial review of the

28  evidence justifying Plaintiff's ad-seg placement within a reasonable time. *Id.*, at 476; *see Jace v.*

16

*Lirones*, No. 1:22-cv-00419-ADA-CDB (PC), 2024 WL 991359, at *8 (E.D. Cal. Mar. 7, 2024) ("Plaintiff cannot state a claim for relief if he was provided all the necessary procedural protections and instead simply disagrees with the result"). Thus, Plaintiff received all the due process protections he was due.

### 7.   Staff Security Alert

In this case, Plaintiff has alleged more than he was simply transferred to Corcoran, refused transfer to another facility, and placed in ad-seg. The crux of Plaintiff's claims is that Delos Santos violated the SSA by keeping Plaintiff housed at Corcoran and placing him in ad-seg, where Plaintiff suffered harm at the hands of other inmates and correctional officers. Plaintiff reasons that, if Delos Santos had not violated the SSA, the attacks would not have occurred, and therefore, Delos Santos must be held liable.

Non-compliance with prison policies or grievance procedures, absent more, does not rise to the level of a constitutional violation. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). The existence of regulations governing the conduct of prison employees does not necessarily entitle plaintiff to sue civilly to enforce the regulations or to sue for damages based on the violation of the regulations. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (California prison regulations "do not establish a federal constitutional violation"); *Nible v. Fink*, 828 F. App'x 463 (9th Cir. 2020) (violations of title 15 of the California Code of Regulations do not create private right of action); *Thompson v. Morales*, No. CV-F-04-6554 REC SMS P, 2005 WL 8156816, at *4 (E.D. Cal. Apr. 14, 2005) (same), *recommendations adopted*, 2005 WL 8156813 (E.D. Cal. June 10, 2005).

Even though Delos Santos was involved in the underlying SSA, Plaintiff does not have a liberty interest in enforcing the SSA. Therefore, Plaintiff cannot hold Delos Santos liable for a due process violation based on his noncompliance with the SSA.

### 8.   Hardship

Plaintiff may also raise a due process challenge to his placement in ad-seg based on conditions of confinement.

Under state law, the existence of a liberty interest created by prison regulations is

17

1    determined by focusing on the nature of the condition of confinement at issue. *Wilkinson,* 545

2    U.S. at 221-23 (citations & quotation marks omitted). Liberty interests created by prison

3    regulations are generally limited to freedom from restraint that imposes an "atypical and

4    significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*,

5    515 U.S. at 484. "There is no single standard for determining whether a prison hardship is

6    atypical and significant, and the 'condition or combination of conditions or factors requires case

7    by case, fact by fact consideration.'" *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003)

8    (quoting *Keenan v. Hall*, 83 F.3d 1083, 1088 (9th Cir. 1996)). Courts may consider: (1) the

9    duration of the confinement; (2) whether the conditions of the confinement were significantly

10   harsher than those of prisoners in the general population or confined prisoners; (3) whether the

11   confinement will invariably affect the duration of the prisoner's sentence; and (4) whether the

12   prisoner is confined for emergency reasons. *See Brown v. Oregon Dep't of Corr.*, 751 F.3d 983,

13   987 (9th Cir. 2014); *Richardson v. Runnels*, 594 F.3d at 672-73.

14           Although being attacked by other inmates and correctional officers may be a significant

15   hardship, given the numbers of excessive force and failure to protect cases filed in this district

16   alone, the Court cannot find that such conditions are atypical. In this particular case, as

17   discussed, the allegations do not sufficiently link Defendant Delos Santos's violation of the SSA

18   to the attacks. Beyond the two incidents of violence suffered by Plaintiff, he has not indicated

19   that he was subjected to conditions of confinement that were harsher than those of other

20   prisoners in ad-seg at Corcoran. Nor has Plaintiff indicated the length of the ad-seg confinement

21   or that the ad-seg confinement affected the duration of his sentence. Upon consideration of the

22   combinations of conditions or factors of Plaintiff's confinement, the Court finds the TAC fails to

23   state a due process claim against Delos Santos.

24           Accordingly, the Court recommends dismissal of Defendant Delos Santos as a defendant.

25   **B.      Claims Against Other Defendants**

26   **Defendants Reaves and Pascua: Eighth Amendment Failure to Protect**

27           Plaintiff asserts Eighth Amendment claims against Reaves and Pascua for "personal

28   safety" and failure to protect. The allegations in the claims are substantially the same and are

1    based on their conduct at CTC on November 7, 2018. Reaves and Pascua knew that inmates at

2    ad-seg needed to be secured at all times to protect prisoners from other prisoners. (Doc. 21 at 11-

3    12.) Yet, Defendants failed to follow procedures and knowingly failed to secure the attacker's

4    mechanical restraints properly twice and failed to search him for weapons. (*Id*. at 12.) As a result

5    of Defendants' deliberate indifference to the "obvious" risk of serious harm posed by the

6    unsecured, armed attacker, Plaintiff was stabbed multiple times. (*Id*.) Construing Plaintiff's

7    allegations liberally, the Court finds the TAC states Eighth Amendment failure to protect claims

8    against Defendants Reaves and Pascua.

9                    **Defendants Mendoza and Pascua: Eighth Amendment Excessive Force**

10       The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S.

11   Const. amend. VIII. "It is undisputed that the treatment a prisoner receives in prison and the

12   conditions under which he is confined are subject to scrutiny under the Eighth Amendment."

13   *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The "unnecessary and wanton infliction of pain"

14   on prisoners "constitutes cruel and unusual punishment." *Whitley v. Albers*, 475 U.S. 312, 319

15   (1986) (internal quotation marks & citation omitted). "Being violently assaulted in prison is

16   simply not part of the penalty that criminal offenders pay for their offenses against society."

17   *Farmer*, 511 U.S. at 834 (internal quotation marks & citation omitted).

18       A correctional officer engages in excessive force in violation of the Eighth Amendment if

19   he (1) uses excessive and unnecessary force under all the circumstances, and (2) "harms an

20   inmate for the very purpose of causing harm," and not "as part of a good-faith effort to maintain

21   security." *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). Thus, when an officer is

22   accused of using excessive force, "the core judicial inquiry is . . . whether force was applied in a

23   good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

24   *Hudson*, 503 U.S. at 6-7. In making this determination, the court may consider (1) the need for

25   application of force, (2) the relationship between that need and the amount of force used, (3) the

26   threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the

27   severity of a forceful response. *Id.* at 7.

28       Plaintiff alleges Defendants Mendoza and Pascua used excessive force when he arrived at

1   CTC. (Doc. 21 at 12.) Plaintiff alleges a Doe[7] began punching Plaintiff and physically forced

2   him out of the bed and onto the floor. (*Id.*) Plaintiff further alleges Mendoza was on Plaintiff's

3   back applying pressure, while Pascua grabbed at Plaintiff's ankle restraints, causing pain,

4   chafing, and scraping. (*Id.* at 12-13.) Accepting these allegations as true, the excessive force

5   claims against Defendants Mendoza and Pascua may proceed.

6                    **Defendant Pascua: First Amendment Retaliation**

7           Plaintiff adds a retaliation claim against Defendant Pascua. (Doc. 21 at 13-14.) He asserts

8   that when he was handcuffed to the bed at CTC, he "mentioned that he would be following up

9   with writing an appeal" because Pascua's actions caused Plaintiff to be attacked. (*Id*. at 13.)

10  Plaintiff further alleges that he stated to Pascua that he would appeal the fact he was not

11  permitted to speak with medical staff about his medical care and that Pascua attempted to

12  intimidate Plaintiff from filing an appeal and subjecting him to physical abuse. (*Id*.) Plaintiff

13  asserts Pascua chilled Plaintiff's right to engage in a protected activity. (Id. at 13-14.) Accepting

14  these allegations as true, the retaliation claim against Defendant Pascua may proceed.

15              **Defendants Cerda, Garcia & Carranza: Eighth Amendment Excessive Force**

16          Plaintiff asserts excessive force claims against Defendants Cerda, Garcia, and Carranza,

17  who had escorted Plaintiff from CTC back to his cell at ad-seg. (Doc. 21 at 14.) With Plaintiff

18  still in waist restraints and handcuffs, Garcia forced Plaintiff out of the wheelchair and swung

19  him against the wall. (*Id*.) After the three officers forced Plaintiff to the ground, they each

20  applied force and caused Plaintiff pain, even though he was not resisting. (*Id*.) Carranza used his

21  body weight and knee on Plaintiff, while Cerda applied force to Plaintiff's legs; this caused him

22  to suffer shortness of breath. (*Id*.) These allegations, liberally construed, are sufficient to state

23  cognizable excessive claims against these Defendants.

24              **Defendants Vellido and Podsakoff: Eighth Amendment Excessive Force**

25          Plaintiff alleges that Vellido and Podsakoff also used excessive force when Plaintiff was

26  in his cell with his arms through the tray slot, strained Plaintiff's arms and yanked him against the

27  door, and pushed the chain that connected Plaintiff's handcuffs to the triangular bar. (Doc. 21 at

28

---

[7] Plaintiff does not indicate that this staff member is a defendant against whom a claim has been brought.

15.) These acts were done intentionally, maliciously, and sadistically to inflict physical, mental, and emotional pain. (*Id.*) Liberally construing the TAC, Plaintiff has stated cognizable Eighth Amendment excessive force claims against Defendants Vellido and Podsakoff.

### Defendant Davison: Eighth Amendment Failure to Protect

Lastly, Plaintiff asserts an Eighth Amendment failure to protect claim against Defendant Davison. (Doc. 21 at 16.) He contends Davison "left in charge of the room given his security alarm specifically." (Doc. 21 at 16.) Plaintiff asserts Davison was deliberately indifferent when he "ran out the treatment group room … leaving Plaintiff under attack [and] depriving Plaintiff of personal safety."  and causing irreparable injury and harm. (*Id.*) As a result of Davison's actions, Plaintiff suffered irreparable injury and harm. (*Id.*) Plaintiff states Ulysses Z. Perez and Valentino Hightower, two other inmates present in the group room, witnessed the attack and related events. (*Id.*) Accepting Plaintiff's allegations as true, Plaintiff plausibly alleges a cognizable failure to protect claim against Defendant Davison.

### *Summary and Futility of Amendment*

In summary, Plaintiff has plausibly alleged the following claims: (1) Eighth Amendment failure to protect claims against Defendants Reaves, Pascua, and Davison; (2) Eighth Amendment excessive force claims against Defendants Mendoza, Pascua, Cerda, Garcia, Carranza, Vellido, and Podsakoff; and (3) First Amendment retaliation claim against Defendant Pascua. Plaintiff fails to allege any cognizable claim against Defendant Delos Santos or any other individual. Because Plaintiff has had several opportunities to cure the deficiencies in his complaints, including his allegations against Defendant Delos Santos, the Court finds it would be futile to provide Plaintiff further leave to amend his complaint in this regard. "A district court may deny leave to amend when amendment would be futile." *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013); accord *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely").

### VI.   CONCLUSION AND RECOMMENDATIONS

Accordingly, **IT IS HEREBY ORDERED** that the Clerk of the Court shall assign a district judge to this action.

Further, **IT IS HEREBY RECOMMENDED** that:

1. This action proceed *only* on the following cognizable claims: (1) Plaintiff's Eighth Amendment failure to protect claims against Defendants Reaves, Pascua, and Davison; (2) Eighth Amendment excessive force claims against Defendants Mendoza, Pascua, Cerda, Garcia, Carranza, Vellido, and Podsakoff; and (3) First Amendment retaliation claim against Defendant Pascua, with the remaining claims to be dismissed; and

2. Defendant Delos Santos be dismissed from this action.

These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 19, 2024**

UNITED STATES MAGISTRATE JUDGE

22